UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM ROBINSON,

                              Plaintiff,

        -v-

DR. MORRIS CLARK, NA DAWN OSSELMANN,
DR. DAVIS, SUPERINTENDENT GRIFFEN, MD
FREDERICK BERNSTEIN, and RMD GAIL
BAILEY WALLACE,

                              Defendants.

No. 15-CV-8434 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances:</u>

William Robinson, Jr.
Attica, NY
*Pro Se Plaintiff*

Kristen R. Vogel, Esq.
New York Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Pro se Plaintiff William Robinson, Jr. ("Plaintiff") brings this Action against Dr. Morris

Clark ("Dr. Clark"), Dawn Osselmann ("Nurse Osselmann"), Dr. Eric Davis ("Dr. Davis"),

Superintendent Thomas Griffin ("Superintendent Griffin"), Dr. Frederick Bernstein ("Dr.

Bernstein"), and Dr. Gail Bailey-Wallace ("Dr. Wallace" and collectively, "Defendants").[1]

Plaintiff alleges that Defendants violated his rights under the Eighth Amendment by failing to

provide adequate medical treatment for a shoulder injury.  (*See generally* Compl. (Dkt. No. 2).)

_____

        [1] Plaintiff misspelled Superintendent Griffin's name in the Complaint.  The Court will
use the correct spelling throughout this Opinion.

Defendants have filed a Motion To Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (the "Motion"). (Dkt. No. 23.) For the reasons stated below, the Motion is granted.

I.  Background

A.  Factual Background

The following facts are taken from the Complaint and the documents appended thereto, and are taken as true for purposes of the Motion.

Plaintiff alleges that while he was incarcerated at the Green Haven Correctional Facility ("Green Haven"), he injured his right shoulder on April 19, 2015, during a football game. (Compl. ¶ IV.1.) He was rushed to emergency sick call and placed on a medical "telecam" call to an outside hospital. (*Id.*) Plaintiff alleges that he was in "severe" pain and a bone was protruding from his shoulder. (*Id.*) On April 20, 2015, Plaintiff's shoulder was x-rayed. The x-rays revealed that Plaintiff's shoulder was separated from all three tendons. (*Id.*) Plaintiff was given an arm sling, 40mg ibuprofen packets, and a medical excuse/permit for the arm sling from April 20, 2015 until May 20, 2015. (*Id.*) Plaintiff was given 40mg ibuprofen packets despite a nurse from the hospital allegedly advising Defendants to give him 800mg of ibuprofen. (*Id.*) On April 27, 2015, Plaintiff again complained of severe pain and received additional x-rays. (*Id.*)

On May 6, 2015, Plaintiff was seen by Dr. Clark. (*Id.*)[2] Plaintiff reported "extreme" pain and lack of mobility in his arm and shoulder. (*Id.*) Dr. Clark allegedly told Plaintiff that "there was no positive damage and that Plaintiff only banged his shoulder pretty good. And that it should heal itself in a short period of time if left in [the] prescribed arm sling." (*Id.* ¶ IV.2.)

_____

[2] Plaintiff states that he was "once again" seen by Dr. Clark on May 6, 2015. (Compl. ¶ IV.1.) Plaintiff does not, however, allege anything about his contact with Dr. Clark before that date.

2

Plaintiff notes that he constantly complained of "extreme pain" and "clicking sounds" coming from his shoulder in facility sick call slips.  (*Id.*)  To help relieve this pain, Plaintiff was given "(6) 40mg 2 packets of ibuprofen" and analgesic balm.  (*Id.*)

Plaintiff filed a grievance with the Green Haven Inmate Grievance Committee ("IGRC") regarding his shoulder injury on August 5, 2015, claiming that he received inadequate medical care and making a "FOIL request" for his medical records.  (*Id.* at ECF 11.)[3]  Nurse Osselmann allegedly filed a fabricated memorandum with the IGRC, stating that Plaintiff reinjured his shoulder "to cover up" how Plaintiff's shoulder had been in the same condition since April 25, when Plaintiff complained of extreme pain.  (*Id.* ¶ IV.4.)  The memorandum notes that Plaintiff reinjured his shoulder during an incident in the mess hall on August 3, (*id.* at ECF 14), where a gas leak forced inmates and staff to "trample one another" to escape the room, (*id.* ¶ IV.2).

Plaintiff was again seen by Dr. Clark on the same day he filed his grievance.  Dr. Clark represcribed the use of an arm sling and gave Plaintiff packets of ibuprofen.  (*Id.*)  Plaintiff alleges that he was still in "extreme" pain at this time.  (*Id.*)

On September 10, 2015, Plaintiff was seen by orthopedic specialist Jonathan Holder ("Dr. Holder").  Dr. Holder recommended reconstructive surgery on Plaintiff's shoulder. Plaintiff alleges that Dr. Holder found that an immediate shoulder repair was necessary and expressed concern over the length of the delay in repairing it.  (*Id.*)  Dr. Holder attempted to schedule the reconstructive surgery, but was denied by Drs. Bailey-Wallace and Bernstein.  (*Id.*) On September 25, 2015, Dr. Clark informed Plaintiff that his shoulder surgery was approved. (*Id.* at ECF 6.)

---

[3] Plaintiff's exhibits are not numbered.  The Court therefore cites to the ECF page numbers when referring to them.

On October 5, 2015, Plaintiff was seen by Dr. Davis for a check-up. (*Id.* ¶ IV.3.) Plaintiff alleges that Dr. Davis did not give him anything to cope with the "sharp pains" he felt in his shoulder. (*Id.*)

The next day, Superintendent Griffin denied Plaintiff's appeal from the IGRC's decision. (*Id.* at ECF 12.)[4] Superintended Griffin noted that Plaintiff reinjured his shoulder on August 3, 2015, that treatment was ongoing, and that Plaintiff should make a formal FOIL request to receive his medical records. (*Id.*)

On October 11, 2015, Plaintiff sent separate letters to Dr. Bernstein, Dr. Clark, and Superintendent Griffin. (*Id.* at ECF 8–10.) The letters explain that the ibuprofen packets that Plaintiff received from sick call and Dr. Clark were ineffective and request stronger pain medication. (*Id.*) Dr. Bernstein responded to the letter he received, directing Plaintiff to attend sick call or schedule an appointment with his primary care provider to discuss his pain management concerns. (*Id.* at ECF 13.) It is unclear from the record whether Dr. Clark or Superintendent Griffin responded to Plaintiff's letters.

Plaintiff appealed Superintendent Griffin's response to his grievance to the Central Office Review Committee ("CORC") on October 16, 2015, arguing that he did not reinjure his arm on August 3. (*Id.* at ECF 12.) The CORC issued its determination on December 30, 2015. (*See* Decl. of Jeffrey Hale in Supp. of Defs.' Mot. To Dismiss ("Hale Decl.") Ex. B, at 1 (Dkt. No. 25).)[5] It noted that Plaintiff had shoulder surgery on December 15, 2015. (*Id.*)

---

[4] Plaintiff has not provided the IGRC's decision, alleged what the IGRC decided, or alleged the date on which the IGRC rendered its determination.

[5] Plaintiff has not alleged the date on which the CORC rendered its determination, but Defendants have supplied the decision in support of their Motion. (*See* Hale Decl. Ex. B.) The Court may take judicial notice of the CORC's determination. *See Moreau v. Peterson*, No. 14-CV-201, 2015 WL 4272024, at *3 (S.D.N.Y. July 13, 2015) ("Where . . . exhaustion of

Plaintiff contends that Drs. Clark, Bernstein, Bailey-Wallace, Davis, Nurse Osselmann, and Superintendent Griffin all had knowledge that he was in "extreme pain." (Compl. ¶ IV.3.) Defendants allegedly ignored his complaints of pain and "act[ed] with deliberate indifference to [his] medical condition." (*Id.*) Plaintiff claims that Defendants acted with a mental state "more blameworthy than negligence," (*id.*), because they knowingly disregarded an excessive risk to his health and chose a less efficacious treatment plan, i.e., Defendants "unreasonably delayed surgery," (*id.* ¶ V), and refused to give him stronger pain relief medication, (*id.* ¶¶ IV.3–4).

B.  Procedural Background

Plaintiff filed his Complaint on October 26, 2015. (Dkt. No. 2.) Pursuant to a memo endorsement, (Dkt. No. 22), Defendants filed their Motion and accompanying papers on June 16, 2016, (Dkt. Nos. 23–27). Plaintiff's opposition papers were originally due on July 16, 2016. (*See* Dkt. No. 22.) The schedule was later amended such that Plaintiff's opposition papers were due October 17, 2016 because it was possible that Plaintiff did not receive Defendants' papers when they were first served. (Dkt. No. 32.) On October 11, 2016, Plaintiff was granted an additional 30 days to respond. (Dkt. No. 34.) On December 19, 2016, Plaintiff was given one final extension until January 20, 2017. (Dkt. No. 38.) On January 27, 2017, Plaintiff filed a letter stating that he received the December 19, 2016 Order on January 20, 2017, but is ready to "proceed with his response." (Dkt. No. 39.) The Court received Plaintiff's response on February 14, 2017. The submission consists of Plaintiff's medical records and copies of filings that have

---

administrative remedies is a prerequisite to bringing suit, a court may take judicial notice of the records and reports of the relevant administrative bodies, as well as the facts set forth therein." (internal quotation marks omitted)); *Moor v. Fischer*, No. 10-CV-4038, 2011 WL 2988527, at *2 (S.D.N.Y. July 22, 2011) ("Here, this [c]ourt takes judicial notice of the records maintained by DOCS in connection with the Inmate Grievance Program, including the records of the Central Office Review Committee . . . .).

been made throughout the course of this Action.  In lieu of filing a reply brief, Defendants

submitted a letter stating that the Motion should be granted for the reasons set forth in their

moving papers.  (Dkt. No. 40.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of

his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (second alteration in original) (citations omitted).  Instead, the Supreme Court

has emphasized that "[f]actual allegations must be enough to raise a right to relief above the

speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by

showing any set of facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff

must allege "only enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

But if a plaintiff has "not nudged [his or her] claims across the line from conceivable to

plausible, the[] complaint must be dismissed."  *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679

(2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a

context-specific task that requires the reviewing court to draw on its judicial experience and

common sense.  But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the

pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R.

Civ. P. 8(a)(2))).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . ." (internal quotation marks omitted)); *Aegis Ins. Servs., Inc. v. 7 World Trade Co.*, 737 F.3d 166, 176 (2d Cir. 2013) ("In reviewing a dismissal pursuant to Rule 12(b)(6), we . . . accept all factual allegations in the complaint as true . . . ." (alteration and internal quotation marks omitted)).  Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).

Where, as here, a plaintiff proceeds pro se, the court must "construe[] [his or her complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (internal quotation marks omitted); *see also Farzan v. Wells Fargo Bank, N.A.*, No. 12-CV-1217, 2013 WL 6231615, at *12 (S.D.N.Y. Dec. 2, 2013) (same), *aff'd sub nom. Farzan v. Genesis 10*, 619 F. App'x 15 (2d Cir. 2015).  In deciding a motion to dismiss a pro se complaint, it is appropriate to consider certain "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (internal quotation marks omitted), including "documents that a pro se litigant attaches to his [or her] opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (noting that a court may consider "factual allegations made by a pro se party in his papers opposing the motion" (italics omitted)).  However, "the liberal

treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and internal quotation marks omitted)).

### B.  Analysis

Defendants contend generally that Plaintiff's Complaint must be dismissed for two reasons: (1) Plaintiff did not exhaust his administrative remedies, and (2) Plaintiff failed to plausibly allege an Eighth Amendment deliberate indifference claim.  Defendants also argue that the claims against Superintendent Griffin must be dismissed because he was not personally involved in the events giving rise to this Action, and even if he were, he is entitled to qualified immunity.  For the reasons that follow, the Court holds that Plaintiff failed to exhaust his administrative remedies and has not pled a deliberate indifference claim.

#### 1.  Exhaustion of Administrative Remedies

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under [§] 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The exhaustion requirement applies to all personal incidents while in prison, *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes"); *see also Johnson v. Killian*, 680 F.3d 234, 238 (2d Cir. 2012) (per curiam) (same), and includes actions for monetary damages despite the fact

that monetary damages are not available as an administrative remedy, *Booth v. Churner*, 532 U.S. 731, 741 (2001) (holding exhaustion is required "regardless of the relief offered through administrative procedures").  Moreover, the PLRA mandates "'proper exhaustion'—that is, 'using all steps that the agency holds out, and doing so properly,' . . . [which] entails . . . 'completing the administrative review process in accordance with the applicable procedural rules.'"  *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011) (alteration omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88, 90 (2006)); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").[6]

As a general matter, the New York State Department of Corrections and Community Supervision ("DOCCS") Inmate Grievance Program ("IGP") outlines the procedures that apply to grievances filed by inmates in New York State correctional facilities.  The IGP provides for a three-step grievance process.  (*See* Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") 6 (Dkt. No. 24) (citing 7 N.Y.C.R.R. § 701.5).)  *See also Abdallah v. Ragner*, No. 12-CV-8840, 2013 WL 7118083, at *2 (S.D.N.Y. Nov. 22, 2013) (noting that "[DOCCS] provides an administrative remedy for many prisoners' claims," which is "a grievance system available to prisoners in custody at state prisons" (citing 7 N.Y.C.R.R. § 701.1(c)))  Under the framework used in typical cases, an inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence.  7 N.Y.C.R.R. § 701.5(a)(1).  The second step in the tripartite framework is for the grievant or any direct party to appeal the IGRC's decision to the prison superintendent within seven calendar days after receipt of the

---

[6] Under certain circumstances not relevant here, exhaustion may be excused where administrative remedies are unavailable. *See Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).

written response, although the appealing party can seek an exception to the time limit, *see id.*

§ 701.5(c)(1).  The third and final step is to appeal the superintendent's decision to the CORC,

which the prisoner must do within seven days of the superintendent's written response to the

grievance.  *Id.* § 701.5(d)(1)(i).  Here, too, an inmate may request an exception to the time limit,

*see id.*[7]  "[O]nly after CORC has reviewed the appeal and rendered a decision are New York's

grievance procedures exhausted."  *Gardner v. Daddezio*, No. 07-CV-7201, 2008 WL 4826025, at

*2 (S.D.N.Y. Nov. 5, 2008).

      A plaintiff must exhaust his administrative remedies *before* filing his initial complaint in

federal court.  Indeed, "[w]hen a prisoner does not properly exhaust his administrative remedies

before filing suit, the action *must* be dismissed."  *Mateo v. Alexander*, No. 08-CV-8797, 2010

WL 431718, at *3 (S.D.N.Y. Feb. 9, 2010); *see also Harris v. Gunsett*, No. 12-CV-3578, 2013

WL 3816590, at *6 (S.D.N.Y. July 22, 2013) (same).  "This is so even if the claim has since

been exhausted."  *Mateo v. Ercole*, No. 08-CV-10450, 2010 WL 3629520, at *3 (S.D.N.Y. Sept.

17, 2010).  In other words, "[s]ubsequent exhaustion after suit is filed . . . is insufficient," *Neal v.

Goord*, 267 F.3d 116, 122 (2d Cir. 2001), *overruled on other grounds by Porter*, 534 U.S. 516;

*see also Harris*, 2013 WL 3816590, at *6 (same), even where "'it might seem more efficient

simply to proceed with the lawsuit rather than dismiss it only to see it immediately re-filed,'"

*Harris*, 2013 WL 381590, at *6 (quoting *Mateo v. Alexander*, 2010 WL 431718, at *3).

      Defendants bear the burden of proving that Plaintiff failed to exhaust available

administrative remedies.  *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y. 2003) ("[The]

defendants bear the burden of proof and prisoner plaintiffs need not plead exhaustion with

---

[7] The IGP provides for an expedited grievance procedure for allegations of harassment.
*See* 7 N.Y.C.R.R. § 701.8.  That procedure is not relevant here.

10

particularity."); *see also Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints." (internal quotation marks omitted)).  Thus, a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted only if "nonexhaustion is clear from the face of the complaint." *Lovick v. Schriro*, No. 12-CV-7419, 2014 WL 3778184, at *4 (S.D.N.Y. July 25, 2014) (internal quotation marks omitted); *see also Lee v. O'Harer*, No. 13-CV-1022, 2014 WL 7343997, at *3 (N.D.N.Y. Dec. 23, 2014) ("Dismissal under Rule 12(b)(6) for failure to exhaust is appropriate if such failure is evidenced on the face of the complaint and incorporated documents.").

It is clear from the face of the Complaint and the documents of which the Court can take judicial notice that Plaintiff did not fully exhaust his administrative remedies before commencing this Action.  Plaintiff filed the Complaint on October 26, 2015, (*see* Compl.), only 10 days after appealing Superintendent Griffin's decision, (*id.* at ECF 12).  The CORC did not render a decision until December 30, 2015, (Hale Decl. Ex. B); over two months after the Complaint was filed.  Even though Plaintiff's grievance is now fully exhausted, the Complaint must be dismissed.  *See Mateo v. Ercole*, 2010 WL 3629520, at *3.  But, because Plaintiff's failure to exhaust his administrative remedies before filing the Complaint "is merely a temporary procedural flaw," *Wagnoon v. Johnson*, No. 02-CV-10282, 2004 WL 583764, at *3 (S.D.N.Y. Mar. 23, 2004) (dismissing the plaintiff's case without prejudice so that he could reinstitute suit), his claims are dismissed without prejudice, *see Berry v. Kerik*, 366 F.3d 85, 87 (2d Cir. 2003) (noting that, where a plaintiff has failed to exhaust administrative remedies, dismissal without prejudice is proper because the plaintiff can simply replead after he exhausts); *McCoy*, 255 F. Supp. 2d at 252 ("A dismissal for failure to exhaust is usually without prejudice . . . because failure to exhaust is ordinarily a 'temporary, curable, procedural flaw.'" (quoting *Snider v.*

11

*Melindez*, 199 F.3d 108, 111 (2d Cir. 1999))).  Plaintiff need only file an Amended Complaint to reinstitute this Action.

2.  Deliberate Indifference to Medical Needs

a.  Applicable Law

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  "There are two elements to a claim of deliberate indifference to a serious medical condition." *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009).  "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone*, 719 F.3d at 138 (internal quotation marks omitted). Analyzing this objective requirement itself requires two inquiries.  "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  The second inquiry "asks whether the inadequacy in medical care is sufficiently serious.  This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Id.* at 280.  To meet the objective requirement, "the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013).  "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).  Nevertheless, the Second Circuit has "presented the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: (1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition significantly affects daily

12

activities, and (3) the existence of chronic and substantial pain." *Morales v. Fischer*, 46 F. Supp. 3d 239, 247 (W.D.N.Y. 2014) (internal quotation marks omitted) (quoting *Brock*, 315 F.3d at 162).[8]

Courts distinguish between situations where no medical attention is given and situations where medical attention is given, but is objectively inadequate.  In the former, the Court need only "examine whether the inmate's medical condition is sufficiently serious." *Salahuddin*, 467 F.3d at 280.  In the latter, however, the inquiry is "narrower"; for example, "if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Id.* (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)).

 "The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138.  Under the second prong, the question is whether the defendants "knew of and disregarded an excessive risk to [the plaintiff's] health or safety and that [they were] both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." *Caiozzo*, 581 F.3d at 72 (alterations and internal quotation marks omitted).  In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Nielsen*, 746 F.3d at 63 (internal quotation marks omitted).  "Deliberate indifference is a mental state equivalent to subjective

---

[8] Defendants do not dispute Plaintiff has alleged a serious medical need.  (Defs.' Mem. 12 n.3.)

recklessness," and it "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* (internal quotation marks omitted). In contrast, mere negligence is not enough to state a claim for deliberate indifference. *See Walker*, 717 F.3d at 125; *Vail v. City of New York*, 68 F. Supp. 3d 412, 424 (S.D.N.Y. 2014) (same). Moreover, "mere disagreement over the proper treatment does not create a constitutional claim," and accordingly, "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Banks v. Annucci*, 48 F. Supp. 3d 394, 408 (N.D.N.Y. 2014) (same).

### b.  Application

Plaintiff has sued four doctors, a nurse, and Green Haven's Superintendent, alleging that each of them was deliberately indifferent to his medical needs.  Defendants raise similar, but separate arguments as to why the Complaint should be dismissed with respect to each Defendant. For purposes of clarity, the Court will address the arguments raised by each Defendant separately.

### i.  Dr. Clark

Plaintiff argues that Dr. Clark violated his Eighth Amendment rights by ignoring his complaints of extreme pain and choosing a less efficacious treatment plan.  Defendants argue that these allegations fall far short of alleging Dr. Clark's deliberate indifference to Plaintiff's medical needs.  (Defs.' Mem. 13.)

Plaintiff alleges that he was seen by Dr. Clark on May 6, 2015.  (Compl. ¶ IV.1.)  During that consultation, Dr. Clark asked Plaintiff if he felt a change in the level of pain he was experiencing, perhaps suggesting that Dr. Clark had seen Plaintiff previously or had read his

medical records. (*Id.*) Plaintiff responded that he remained in "extreme" pain and lacked

mobility in his shoulder. (*Id.*) Dr. Clark explained that "there was no positive damage" to

Plaintiff's shoulder and noted that the shoulder "should heal itself in a short period of time if left

in [the] prescribed arm sling." (*Id.* ¶ IV.2.) To help relieve this pain, Plaintiff was given

ibuprofen and analgesic balm. (*Id.*) Plaintiff was again seen by Dr. Clark on August 5, 2015.

(*Id.*) Dr. Clark represcribed the use of an arm sling and gave Plaintiff packets of ibuprofen. (*Id.*)

Finally, on September 25, 2015, Dr. Clark informed Plaintiff that his shoulder surgery was

approved. (*Id.* at ECF 6.) Dr. Clark allegedly acted with a mental state more blameworthy than

negligence by knowingly disregarding Plaintiff's complaints of pain and choosing an inadequate

course of treatment. (*Id.* ¶ IV.3.)

   The Court is sympathetic to Plaintiff's contentions, but his allegations are insufficient to

state a deliberate indifference claim against Dr. Clark. As alleged, Plaintiff's medical needs

were not ignored. The Complaint recounts the specific dates on which Plaintiff met with his

doctors, including Dr. Clark, and the treatment he received during those encounters. Plaintiff

merely disagrees with the treatment he received. That is insufficient to state a claim. *See*

*Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper

treatment does not create a constitutional claim."); *Nelson v. Deming*, 140 F. Supp. 3d 248, 262

(W.D.N.Y. 2015) (dismissing deliberate indifference claim because the "[p]laintiff's

disagreement with th[e] course of treatment does not amount to deliberate indifference by [the]

[d]efendants"); *Washington v. Westchester Cty. Dep't of Corr.*, No. 13-CV-5322, 2014 WL

1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-settled that the ultimate decision of

whether or not to administer a treatment or medication is a medical judgment that, without more,

does not amount to deliberate indifference."). Furthermore, "[i]n cases challenging the decision

regarding the type and quantity of pain medication, courts have repeatedly declined to find that a medical provider was deliberately indifferent to an inmate's medical needs." *Williams v. Williams*, No. 13-CV-3154, 2015 WL 568842, at \*5 (S.D.N.Y. Feb. 11, 2015); *see also Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (holding that an inmate failed to state a claim for deliberate indifference where he alleged that stronger medication was necessary to treat his medical condition); *Veloz v. New York*, 339 F. Supp. 2d 505, 525 (S.D.N.Y. 2004) ("Differences in opinion by a doctor and a prisoner over the appropriate medication to be prescribed is a disagreement over a treatment plan and does not implicate the Eighth Amendment.").

The Court also construes Plaintiff to be challenging the delay between the time that he was injured in April 2015 and the time he ultimately had surgery in December 2015. "While a lengthy, unjustifiable delay in providing necessary medical treatment may constitute deliberate indifference, that is not at all what happened here." *Frank v. County of Ontario*, 884 F. Supp. 2d 11, 20 (W.D.N.Y. 2012) (citation omitted). Between April and October 2015 Plaintiff was seen by Dr. Clark and other doctors, who determined that the use of an arm sling was appropriate. While Plaintiff alleges that Dr. Holder's recommendation that Plaintiff have immediate reconstructive surgery in September 2015 was initially overruled, Plaintiff's shoulder surgery was ultimately approved later that month. (Compl. ¶ IV.2; *id.* at ECF 6.) "Where temporary delays or interruptions in the provision of medical treatment have been found to satisfy the objective seriousness requirement in [the Second] Circuit, they have involved either a needlessly prolonged period of delay, or a delay which caused extreme pain or exacerbated a serious illness." *Ferguson v. Cai*, No. 11-CV-6181, 2012 WL 2865474, at \*4 (S.D.N.Y. July 12, 2012). None of those circumstances is present here. The delay in scheduling surgery was not "needlessly prolonged" because Plaintiff's doctors were exploring other medical treatments.

And, while the delay resulted in Plaintiff experiencing "extreme" pain for a longer duration, (Compl. ¶ IV.2), Plaintiff was given ibuprofen to cope with the pain before the surgery could occur, (*id.* ¶¶ IV.1–2). *Cf. Balkum v. Unger*, No. 06-CV-6578, 2009 WL 290439, at *5 (W.D.N.Y. Feb. 5, 2009) (granting summary judgment in favor of defendants where the "record indicate[d] that [one of the defendants] was attentive to [the] [p]laintiff's medical needs, as shown by the fact that [the defendant] provided pain medication and diagnostic testing, and arranged for surgery"). Nowhere does Plaintiff allege that Dr. Clark refused to see him or give him pain medication when he requested it; he merely complains that he did not get the type of pain medication that he wanted.

At best, Plaintiff may have alleged a claim for medical malpractice. Such allegations, however, cannot "support an Eighth Amendment claim unless the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces a conscious disregard of a substantial risk of serious harm." *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (internal quotation marks omitted); *see also Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001) ("[D]isagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a [§] 1983 claim. These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment."). Plaintiff merely offers the conclusory allegation that Dr. Clark "acted with a mental state more blameworthy than negligence," (Comp. ¶ IV.3), but has not alleged sufficient facts to support this allegation. *See Flemming v. Smith*, No. 11-CV-804, 2014 WL 3698004, at *6 (N.D.N.Y. July 24, 2014) ("Conclusory allegations that medical staff defendants were aware of a [prisoner's] medical needs and failed to provide adequate care are generally

17

insufficient to state an Eighth Amendment claim of inadequate medical care."); *Gumbs v. Dynan*, No. 11-CV-857, 2012 WL 3705009, at *12 (E.D.N.Y. Aug. 26, 2012) ("[C]onclusory allegations that [the] defendants were aware of [the] plaintiff's medical needs and chronic pain but failed to respond are generally not sufficient proof of [the] defendants' deliberate indifference and cannot survive a Rule 12(b)(6) motion to dismiss."); *Adekoya v. Holder*, 751 F. Supp. 2d 688, 697 (S.D.N.Y. 2010) (finding conclusory allegations that the defendants were aware of the plaintiff's medical needs and failed to provide adequate care insufficient to defeat a motion to dismiss); *Evans v. Albany Cty. Corr. Facility*, No. 05-CV-1400, 2009 WL 1401645, at *9 (N.D.N.Y. May 14, 2009) (noting that "a showing of deliberate indifference requires more than just vague and conclusory allegations" (internal quotation marks omitted)).  Indeed, the Complaint is devoid of any allegation that Dr. Clark disregarded any risks or any of Plaintiff's symptoms.  Plaintiff disagrees with Dr. Clark's chosen course of conduct, but that disagreement tells the Court little about Dr. Clark's mental state.

Accordingly, Plaintiff's deliberate indifference claim against Dr. Clark is dismissed.

### ii.  Dr. Davis

Plaintiff alleges that Dr. Davis saw him on October 5, 2015 for a check-up, but wasn't "given anything to cope with the sharp pains" he was experiencing.  (Compl. ¶ IV.3.)  Plaintiff further alleges that Dr. Davis acted "with a mental state more blameworthy than negligence." (*Id.*)  These "[b]are legal conclusions . . . do not suffice in the absence of adequate factual legal allegations."  *Benavides v. Grier*, No. 09-CV-8600, 2011 WL 43521, at *3 (S.D.N.Y. Jan. 6, 2011).  Accepting Plaintiff's allegations as true, as the Court must, Plaintiff still has failed to state a claim because he has provided no factual basis upon which to conclude that Dr. Davis acted with deliberate indifference.  Moreover, the letters attached to the Complaint, (Compl. at

ECF 8–10), reveal that Plaintiff was receiving pain medication around the time he met with Dr. Davis, (*see, e.g.*, *id.* at ECF 8 ("I'm writing in regards to obtaining some type of pain relievers besides the 40mg packets of ibupro[f]en sick call [and] Dr. Clark has given me.")).  Accordingly, Plaintiff's claim against Dr. Davis is dismissed.

### iii.  Drs. Bailey-Wallace & Bernstein

Plaintiff alleges that Drs. Bailey-Wallace and Bernstein declined to act on Dr. Holder's recommendation that Plaintiff have immediate reconstructive surgery.  (*Id.* ¶ IV.2.)  This allegation, the lone factual allegation regarding Drs. Bailey-Wallace and Bernstein, is insufficient to state a claim of deliberate indifference.  "[A] prison doctor who relies on his medical judgment to modify or disagree with an outside specialist's recommendation of how to treat an inmate is not said to act with deliberate indifference."  *Williams v. Smith*, No. 02-CV-4558, 2009 WL 2431948, at *9 (S.D.N.Y. Aug. 10, 2009).  Moreover, Plaintiff's surgery was ultimately approved on September 25, 2015, two weeks after his consultation with Dr. Holder. (Compl. at ECF 6.)  Drs. Bailey-Wallace and Bernstein made a medical determination that Plaintiff did not require immediate surgery.  Plaintiff disagrees with their assessment.  The Court is in no position to second guess the doctors' determination and Plaintiff's disagreement does not amount to a claim for deliberate indifference.  *See Chance*, 143 F.3d at 703 ("[T]he fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

Plaintiff's letter to Dr. Bernstein requesting stronger pain medication does not alter this conclusion.  (Compl. at ECF 8.)  Dr. Bernstein responded to this letter by directing Plaintiff to attend sick call or request an appointment with his primary care physician to discuss pain

management.  (*Id.* at ECF 13.)  Nothing about this exchange suggests that Dr. Bernstein was deliberately indifferent to Plaintiff's medical needs.

Accordingly, Plaintiff's claims against Drs. Bailey-Wallace and Bernstein are dismissed.

<u>iv.  Nurse Osselmann</u>

Plaintiff alleges that Nurse Osselmann fabricated a memorandum to the IGRC, stating that Plaintiff reinjured his shoulder during the mess hall incident on August 3, 2015.  (*Id.* ¶ IV.4; *id.* at ECF 14.)  The purportedly fraudulent memorandum was allegedly created to "cover up" the fact that Plaintiff's shoulder injury actually dated back to April 2015 and the facility was ignoring his complaints of pain since that time.  (*Id.* ¶ IV.4.)  These allegations are insufficient to state a claim of deliberate indifference because they do not relate in any way to the medical treatment Plaintiff received.  *See Benjamin v. Schwartz*, 299 F. Supp. 2d 196, 199 (S.D.N.Y. 2004) (dismissing deliberate indifference claim because, among other reasons, "there [was] no allegation in the complaint . . . that [one defendant] was personally involved in the constitutional deprivation complained of"), *aff'd sub nom. Benjamin v. Koeningsmann*, 204 F. App'x 979 (2d Cir. 2006); *see also Oliver v. Haddock*, No. 08-CV-4608, 2009 WL 4281446, at *6 (S.D.N.Y. Dec. 1, 2009) (dismissing deliberate indifference claim where the defendant allegedly made a false entry in the plaintiff's medical record because the plaintiff did "not allege[] facts that would allow the inference that any falsification of the medical record was intended to cause (or, indeed, did cause) any subsequent delay in [the plaintiff]'s treatment"), *adopted by* 2010 WL 305282 (S.D.N.Y. Jan. 22, 2010).  The allegedly fraudulent memorandum was purportedly created in response to a grievance; Plaintiff does not allege that Nurse Osselmann ever treated him personally or that the memorandum resulted in a change in the level of care he received. Furthermore, Plaintiff's claim amounts to a mere disagreement with Nurse Osselmann's

diagnosis, which is not actionable.  *See Idowu v. Middleton*, No. 12-CV-1238, 2013 WL 4780042, at *9 (S.D.N.Y. Aug. 5, 2013) ("[The] [p]laintiff's disagreement with [a defendant]'s diagnostic technique and medical judgment cannot provide the basis for a deliberate indifference claim under the Eighth Amendment."); *Harris v. Westchester Cty. Med. Ctr.*, No. 08-CV-1128, 2011 WL 2637429, at *3 (S.D.N.Y. July 6, 2011) ("As for misdiagnosis, without more, allegations of negligent treatment and misdiagnosis do no state a cause of action under the Eighth Amendment." (alteration and internal quotation marks omitted)).  There are also facts alleged in the Complaint suggesting that Plaintiff did reinjure his shoulder during the mess hall incident, where the inmates and staff were "forced to trample one another."  (Compl. ¶ IV.2.)  Indeed, Dr. Clark found it necessary to represcribe the use of an arm sling on August 5, 2015—the day after that event.  (*Id.*)  Accordingly, Plaintiff's claim against Nurse Osselmann is dismissed.

### v.  Superintendent Griffin

Plaintiff alleges that Superintendent Griffin knew that he was experiencing extreme pain and loss of mobility in his shoulder and "acted with a mental state more blameworthy than negligence." (*Id.* ¶ IV.3.)  Plaintiff has also attached to the Complaint a letter he wrote to Superintendent Griffin complaining about the care that he was receiving, (*id.* at ECF 10), and Superintendent Griffin's response to his grievance, (*id.* at ECF 12).  The letter requested Superintendent Griffin's assistance in procuring stronger pain medication.  (*Id.* at ECF 10.)  The response to the grievance noted Plaintiff injured his shoulder and that care was ongoing.  (*Id.* at ECF 12.)  Defendants argue that Plaintiff's allegations are conclusory and, in any event, Plaintiff has failed to allege Superintendent Griffin's personal involvement in the allegedly unconstitutional conduct.  (Defs.' Mem. 19.)

Even assuming Plaintiff has alleged that Superintendent Griffin was personally involved in the conduct giving rise to this Action, his claim fails for much the same reasons discussed above; he has not alleged any unconstitutional conduct.  Accordingly, Plaintiff's claim against Superintendent Griffin is dismissed.  *See Benavides*, 2011 WL 43521, at *3 (conclusory allegations that the defendants were deliberately indifferent are insufficient to state a claim in the "absence of adequate factual . . . allegations").

### C.  Plaintiff's February 14, 2017 Submission

Plaintiff mailed to the Court a packet of medical records and copies of filings made throughout the course of this Action.  The submission will be filed under seal because the documents contain medical information not appropriate for filing on a public docket.

The records Plaintiff submitted relate almost exclusively to the shoulder surgery that occurred on December 15, 2015.  They have no bearing on the outcome of this Motion because Plaintiff has not alleged a cause of action relating to the surgery itself; his allegations relate only to the treatment he received from April 2015 until October 2015.  Therefore, the Court's determination remains unaltered—Plaintiff has failed to state a claim.

22

## III. Conclusion

In light of the foregoing analysis, the Court dismisses Plaintiff's Complaint without prejudice. Within 30 days from the date of this Opinion, Plaintiff may file an Amended Complaint, addressing the deficiencies identified herein. Failure to do so may result in the dismissal of this Action with prejudice. The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 23.)

SO ORDERED.

DATED:      February 27, 2017
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

23